IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERRY A. SPRINGER,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-07-2126** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **MAJOR KERESTES,** *et al.*, | : | |
| | : | |
| **Respondents** | : | |

## M E M O R A N D U M

Petitioner Jerry A. Springer ("Springer"), an inmate currently incarcerated at

the State Correctional Institution at Rockview in Bellefonte, Pennsylvania ("SCI-

Rockview"), initiated this action with the filing of a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western

District of Pennsylvania. (Doc. 1.)[1] The matter was subsequently transferred to this

court. Named as Respondents are Major Kerestes, the District Attorney for Potter

County, and the Attorney General for the Commonwealth of Pennsylvania.[2] Springer

seeks to challenge his 2000 conviction for two counts of third degree murder, two

---

[1] According to the electronic docket in this case, the habeas petition was received on July 30, 2007, (Doc. 1), but also docketed on August 16, 2007, (Doc. 5). For purposes of disposition here, the court will refer to the filed petition at Document 1.

[2] The only properly named respondent in a federal habeas corpus action is the applicant's custodial official. *See* 28 U.S.C. § 2242. Superintendent Franklin Tennis of SCI-Rockview is Springer's custodial official for purposes of § 2242.

counts of homicide by vehicle, and driving under suspension-DUI related, in the Court of Common Pleas of Potter County, Pennsylvania ("trial court" or "Potter County court"). For the reasons that follow, the petition will be denied.

## I.  **Background**

On August 21, 2000, following his plea of *nolo contendere* to two counts of third degree murder, two counts of homicide by vehicle, and one count of driving under suspension-DUI related, the Potter County court sentenced Springer to a term of imprisonment of thirty-two and a half (32-1/2) to sixty-five (65) years. The relevant facts were summarized by the Pennsylvania Superior Court as follows:

> Eighteen days before the accident, thirty-year-old [Springer] was placed on ARD and his license was suspended based on a driving-under-the-influence-of-alcohol charge. As part of his ARD disposition, [Springer] was ordered to refrain from using alcohol. On the morning of the accident, he was told by his parents not to drink and drive. Later that morning, a garage attendant warned [Springer] not to drive as he appeared to have been drinking. Prior to the 1:00 p.m. accident, [Springer] was involved in a domestic dispute with his girlfriend and was very angry.
>
> Just prior to the accident, [Springer] was observed driving very recklessly. Specifically, he swerved into oncoming traffic at one point and was traveling sixty miles per hour on a windy country road with a posted speed limit of forty-five miles per hour. The accident occurred as follows:

[Springer] left the roadway, proceeded up an embankment that had a slope of 46 degrees. He was traveling at a speed of at least 60 miles per hour at that point. . . . After being on this embankment and proceedings along the embankment for some distance, he then went into the ditch. He proceeded along the ditch again at a high rate of speed. He was observed not to have braked or slowed down during the entire time he was on the bank or in the ditch nor was there any indication that he had at any time applied brakes to his motor vehicle. [Springer] again proceeded northerly on Route 872 and crossed into the southbound lane of traffic at a distance of approximately 500 feet from what would be referred to as the point of impact. He corrected his vehicle, over corrected, went off the right side or the east side of the highway and when he did so he struck an embankment and immediately thereafter he struck two children. Those two children were Clifford Scheck, IV, age 8 years and Savannah Scheck, age 10 years. Those children were at a minimum of ten feet off of the roadway. They were in fact in the private driveway when they were struck by Mr. Springer's automobile. Mr. Springer's automobile then went air borne, it flipped over onto its roof propelling Savannah Scheck to the right or east of the ditch and carrying the child Clifford Scheck forward and underneath the vehicle. Both of these children suffered multiple blunt force trauma to their bodies, brain damage, spine damage, multiple broken bones that resulted in instant death for both children. As I stated before, [Springer] was familiar with this roadway.

N.T. 7/12/00, at 18-19.

The accident occurred on a sunny Sunday afternoon. [Springer] did not brake or attempt to brake until immediately prior to the impact with the children. His brakes were not faulty. [Springer] was trapped in his vehicle and was abusive to emergency personnel. When told at the accident scene that he just had killed two children, [Springer] responded, "I don't care, give me another beer." *Id*. at 20. [Springer's] BAC at the time of the accident was .28%, nearly three times the legal limit.

(Doc. 20-5, App. C, *Commonwealth v. Springer*, No. 2181 WDA 2000, slip op. at 1-3 (Pa. Super. Ct. July 10, 2001) 2-4.)  Immediately following the entering of the plea, Springer was sentenced by the trial court to a term of imprisonment of 32-1/2 to 65 years.

Springer timely filed post-sentencing motions, which were denied on November 20, 2000.  He timely filed a counseled direct appeal with the Pennsylvania Superior Court on December 15, 2000.  (Doc. 20-3, App. A, Appellant Br., 8-14.)  In that appeal, Springer presented the following questions: (1) Was the court's acceptance of Defendant's *nolo contendere* plea to two counts of murder in the third degree based on insufficient factual allegations to sustain the charges; and (2) Were the facts adduced by the Commonwealth at the time of Appellant's plea sufficient as a matter of law to support the element of malice for a conviction of third degree murder.  (*Id*. at 8.)  The Superior Court affirmed the judgment of sentence upon direct appeal by per curiam order dated July 10, 2001.  *Commonwealth v. Springer*, 782 A.2d 1059 (Pa. Super. Ct. 2001).  Springer filed neither a petition for allowance of appeal with the Pennsylvania Supreme Court nor a petition for writ of certiorari with the United States Supreme Court at that time.

On April 9, 2002, Springer filed a petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 *et seq*. in the Potter County court. (*See* Doc. 20-10, App. H, Findings of Fact, Opinion and Order on Defendant's PCRA Petition, as amended, 2-11.) By order dated September 10, 2002, the trial court, now sitting as PCRA court, determined that Springer was denied effective assistance of counsel when appellate counsel did not timely file a petition for allowance of appeal in the Pennsylvania Supreme Court. (*Id*. at 3.) As a result, the PCRA court reinstated Springer's right to pursue such an appeal. (*Id*.) Springer then filed a petition for allowance of appeal on September 25, 2002, which was denied by the Pennsylvania Supreme Court by per curiam order dated January 31, 2003. *Commonwealth v. Springer*, 816 A.2d 1102 (Pa. 2003) (Table). Because the state court reinstated Springer's right to pursue a direct appeal, his judgment of sentence became final on May 3, 2003, or the end of the 90-day period from January 31, 2003 in which a writ of certiorari could have been sought.

Springer filed a second PCRA petition on April 9, 2003. (Doc. 20 at 2.) The PCRA court characterized Springer's grounds for relief as follows:

> In this latest PCRA petition, [Springer] again has premised his grounds for relief on alleged ineffective assistance of the counsel. He alleges that counsel did not engage an accident reconstructionist and accordingly failed to challenge certain facts set forth by the Commonwealth.

5

> [Springer] also suggests that he did not make a statement at the scene, contrary to what the Commonwealth set forth in its facts supporting the plea. [Springer] also complains that there was no agreement with the prosecutor as to the length of the sentence and notes that he has no memory of the incident involved. [Springer] also claims that his rights were not fully explained to him at the time he entered the plea, especially relative to a jury trial. His recollection is that the maximum sentences were not properly explained to him. [Springer] also claims that he was advised not to make a statement at sentencing, which adversely affected him.
>
> He also argues that this Court should have recused itself, and that the length of his sentence should have been argued on appeal. He also disagrees with this trial counsel not producing military records for use at sentencing.

(Doc. 20-10 at 3.) On November 17, 2004, the PCRA court granted Springer's petition in part, giving him permission to appeal the discretionary aspects of his sentence to the Superior Court. (Doc. 20-7, App. E, Appellant's Br. to Superior Court, Apr. 7, 2005, 29.) The PCRA court denied all other claims.

Springer timely filed an appeal with the Superior Court on April 7, 2005. (Doc. 20-7 at 2-30.) In that appeal, Springer raised the following issues:

> 1. Was the plea free, voluntary and knowingly when there was confusion as to what the plea was entered into and what the consequences were of the plea.
>
> 2. Was the failure to have an expert witness counterbalance that of Commonwealth's witness devastating in a case where no eyewitnesses could testify as to what happened.

6

3. Where a defendant is under a jurist's ARD order, and violates that order by D.U.I.-related accident and other D.U.I. defendants are required to be present at the D.U.I. sentencing of the Defendant, should the lower court recuse himself.

4. Should a defendant be penalized at sentencing for following his counsel's advice no[t] to apologize.

(*Id*. at 3.)  On November 10, 2005, the Superior Court found that the trial court did not abuse its discretion in imposing the sentence, and otherwise affirmed the PCRA court's denial of post-conviction relief.  (Doc. 20-9, App. G, *Commonwealth v. Springer*, No. 2128 WDA 2004, slip op. (Nov. 10, 2005) 2-12.)  Springer's timely petition for allowance of appeal in the Pennsylvania Supreme Court was denied by per curiam order dated August 30, 2006.  *Commonwealth v. Springer*, 906 A.2d 542 (Pa. 2006) (Table).

Springer timely filed a *pro se* petition for writ of habeas corpus in the United States District Court for the Western District of Pennsylvania on July 25, 2007.[3] (Doc. 1.)  On November 21, 2007, the Western District court transferred the case to this court.  (*See* Doc. 10.)  By memorandum and order dated January 4, 2008, the court directed service of the petition on Respondents.  (Doc. 14.)  The court also directed Respondents to file an answer stating, *inter alia*, whether any claim in the

---

[3] Although Springer's action was docketed in the Western District on July 30, 2007, his petition is dated July 25, 2007.  (Doc. 1.)

petition is barred by a failure to exhaust state court remedies, a procedural bar, non-retroactivity, or a statute of limitations. (*Id*.) Respondents filed a response to the habeas petition on April 25, 2008. (Doc. 20.) As Springer has not filed a traverse, this matter is ripe for disposition.

## II.   Standards of Review

Before a federal court can review the merits of a state prisoner's habeas petition, the court must first determine whether the petitioner has met the requirements of the doctrines of exhaustion and procedural default.

### A.   Exhaustion & Procedural Default

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded in principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of

the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (citations omitted). While the petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 277 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard*, 404 U.S. at 275).

Under this exhaustion rule, a federal court must dismiss without prejudice habeas petitions that contain any unexhausted claims. *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004). This dismissal requirement does not apply, however, in cases where the state courts would not consider the unexhausted claims because they are procedurally barred by state law. *Doctor v. Walters*, 96 F.3d 675, 681 (3d Cir.

1996).  However, in that situation the petitioner must still overcome the concomitant doctrine of procedural default.  *Id*. at 683.

The doctrine of procedural default bars federal habeas relief when a state prisoner has defaulted on his federal claims in state court pursuant to an independent and adequate state procedural rule.  *Id*.  For example, failure to present federal habeas claims to the state courts in a timely fashion results in procedural default.  *See O'Sullivan*, 526 U.S. at 848 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).  Like a state prisoner who has failed to exhaust his state remedies, "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."  *Coleman*, 501 U.S. at 732.  The doctrine of procedural default therefore ensures that a state prisoner cannot evade the exhaustion requirement of § 2254 by defaulting his federal claims in state court.  *Id*.

However, a federal habeas court can review the merits of procedurally defaulted claims if the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless*, 172 F.3d at 260; *Coleman*, 501 U.S. at 750-51; *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992).  To

demonstrate "cause" for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate "actual prejudice," the petitioner must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To establish such a claim, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

11

physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Further, actual innocence "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Id*. at 329.

## B.  AEDPA Merits Review

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999) (emphasis in original). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an

12

outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id*. at 890.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 285-86 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2000).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278,

296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 317 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 410 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-10.

Further, the United States Supreme Court has clarified the test a district court must apply before granting relief where the court finds constitutional error:

> [I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*, 507

---

[4] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the state court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

> U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), whether or not the
> state appellate court recognized the error and reviewed it for
> harmlessness under the "harmless beyond a reasonable doubt" standard
> set forth in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed.
> 2d 705 (1967).

*Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). Thus, even if the court concludes that

constitutional error occurred in the state court, the court may not grant relief unless

the error "had a substantial and injurious effect or influence in determining the jury's

verdict." *Brecht*, 507 U.S. at 631; *see also Bond v. Beard*, 539 F.3d 256, 276 (3d Cir.

2008).

## III.   **Discussion**

Respondents concede that Springer's instant petition is timely. Because the

court agrees, a discussion of whether addressing the merits of the petition is

precluded by the one-year federal limitations period set forth in 28 U.S.C. § 2244(d)

is not necessary.

In his petition, Springer makes the following claims: (A) state court

presumption of malice in the offense of third degree murder unconstitutionally shifts

the burden of proof to the defendant; (B) state courts misapplied and rendered

decisions contrary to clearly established federal law; (C) insufficient evidence of third

degree murder; (D) constructive denial of counsel; (E) counsel labored under a

conflict of interest; (F) Petitioner is actually innocent of third degree murder; (G) the sentence for third degree murder is constitutionally invalid; (H) Petitioner's plea of *nolo contendere* was involuntarily and unintelligently entered; (I) Petitioner's conviction was obtained by unlawfully induced plea of *nolo contendere*; (J) Petitioner's conviction was obtained by prosecutorial misconduct; and (K) Petitioner's criminal trial was controlled by the government. (Doc. 1 at 6-7.) The court will discuss these claims in turn.

### A.     Claims A, B, D, E, J & K

The court will address the following claims together. In Claim A, Springer asserts that the state court's presumption of malice set forth in definition of third degree murder unconstitutionally shifts the burden of proof to the defendant. In Claim B, Springer asserts that the state courts misapplied and rendered decisions contrary to clearly established federal law. In Claim D, Springer claims he was constructively denied counsel for his defense. In Claim E, Springer claims that his counsel labored under a conflict of interest. In Claim J, Springer claims that his conviction was obtained by prosecutorial misconduct. And finally, in Claim K, Springer claims that his trial was controlled by the government. Springer has not

presented any evidence in support of this claims.  Upon review, the court finds that these claims is procedurally defaulted.

As discussed above, a claim is procedurally defaulted if the petitioner failed to exhaust his state court remedies and is barred from presenting his claim to the state courts due to an independent and adequate state procedural rule.  *Coleman*, 502 U.S. at 732.  Springer's instant claims are unexhausted because he never presented them to the state courts, either on direct appeal or collateral attack.  However, a new state petition would be deemed time-barred under Pennsylvania law, *see* 42 Pa. Cons. Stat. Ann. § 9545(b) (requiring the filing of any petition for post conviction relief, including a second or successive petition, within one year of the date the judgment becomes final),[5] and thus exhaustion is excused but the claims are deemed procedurally defaulted.  In order to have the court consider the merits of his claims, Springer must show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse default.  Here, Springer has not presented any evidence of his cause for default, nor has he demonstrated that a failure to review any of these claims would

---

[5]  Pursuant to 42 Pa. Cons. Stat. Ann. § 9545(b)(3), Springer's conviction became final at the conclusion of direct review, including discretionary review in the United States Supreme Court or Pennsylvania Supreme Court, or at the expiration of the time for seeking such review, on May 3, 2003.  (*See supra* p. 5; Doc. 20 at 7.)

result in a fundamental miscarriage of justice. As a result, the court will deny habeas relief on these claims.

## B.   Claim C

In Claim C,[6] Springer claims that there was insufficient evidence to support his conviction of third degree murder. For purposes of federal habeas review, the court construes this claim as being within the parameters of § 2254(d) because Springer is attempting to argue that there is an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Upon review, the court finds that Springer is not entitled to relief on this claim.

On direct review, the Pennsylvania Superior Court addressed Springer's claim that there was insufficient factual basis for his plea of *nolo contendere* with respect to the counts of third degree murder. (Doc. 20-5 at 2-7.) In rejecting Springer's claim, the Superior Court recounted the factual summary as stated at the plea proceeding. (Doc. 20-5 at 2-4; *see supra*, pp. 2-3.) The court determined that Springer's behavior "before, during, and after this tragedy evidenced a hardness of heart and wickedness of disposition" necessary for a finding of malice. (Doc. 20-5 at 6.) In support, the court stated,

---

[6]   Respondents concede that this claim is exhausted. (Doc. 20 at 15.) Thus, the court will address this claim on the merits.

[Springer] was warned by two people not to drink and drive. He was told specifically not to drive by a parking attendant who saw that he was intoxicated. His blood alcohol content was nearly three times the legal limit. He was speeding on a winding road and already had swerved into the opposing lane prior to the accident. He failed to brake as he drove over an embankment and back onto the road. After killing the two children, he told people at the scene of the accident that he did not care and that he wanted more alcohol. The colloquy establishes that [Springer] was much more than merely reckless.

(*Id*. at 6.) As a result, the Superior Court found that Springer "certainly displayed a conscious disregard for almost certain death or injury, and his conduct at the time of accident was such that he reasonably should have anticipated death or serious bodily injury and logically would result from that conduct." (*Id*.)

After reviewing the record, the court cannot find that the Superior Court's decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. *See Matteo*, 171 F.3d at 891. There is nothing to suggest that the decision to deny Springer's claim that his plea of *nolo contendere* should have been rejected for lack of factual basis was based on an unreasonable determination of the facts. Accordingly, habeas relief on this ground will be denied.

### C. Claim F

In Claim F, Springer claims that he is actually innocent of third degree murder. Springer fails to set forth any factual basis in support of this claim. Upon review, the court will deny this claim.

Initially, the court finds that this claim is procedurally defaulted. As discussed above, a claim is procedurally defaulted if the petitioner failed to exhaust his state court remedies and is barred from presenting his claim to the state courts due to an independent and adequate state procedural rule. *Coleman*, 502 U.S. at 732. Springer's instant claim is unexhausted because he never presented it to the state courts, either on direct appeal or collateral attack. However, a new state petition would be deemed time-barred under Pennsylvania law, *see* 42 Pa. Cons. Stat. Ann. § 9545(b), and thus exhaustion is excused and the claim is deemed procedurally defaulted. In order to have the court consider the merits of his claim, Springer must show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse default.

Under the "miscarriage of justice" doctrine, procedural default may be excused in certain instances. Specifically, in *Schlup*, the Supreme Court held that "if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. "To establish actual innocence, 'a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a

reasonable doubt." *Wright v. Vaughn*, 473 F.3d 85, 92 (3d Cir. 2006) (quoting *Schlup*, 513 U.S. at 327). A petitioner "must also support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324.

In the instant case, Springer has failed to support his claim of actual innocence with any evidence of factual innocence whatsoever that would show that the failure to consider this claim would result in a fundamental miscarriage of justice. Consequently, Springer does not meet the *Schlup* standard and cannot overcome default.

Moreover, to the extent that Springer's claim may be construed as alleging an independent claim for habeas relief based on his alleged actual innocence of the third degree murder conviction, such a free-standing claim of actual innocence does not state a cognizable claim for federal habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

"[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *United States v. Garth*, 188 F.3d 99,

108 (3d Cir. 1999) (quoting *Herrera*, 506 U.S. at 404). Therefore, the Supreme Court has declined to hold that a free-standing claim of actual innocence is a cognizable claim for which federal habeas relief may be granted. *See, e.g.*, *House v. Bell*, 547 U.S. 518, 554-55 (2005) (declining to hold that free-standing innocence claims are cognizable under federal habeas review and recognizing that *Herrera* also declined to make such a holding). "'Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution,' and not to review questions of guilt or innocence." *Garth*, 188 F.3d at 108 (quoting *Herrera*, 506 U.S. at 404); *see also* 28 U.S.C. § 2254(a). In this case, Springer's conclusory assertion of "actual innocence" does not allege a violation of the Constitution or federal law. Moreover, Springer simply fails to allege any factual circumstances whatsoever which, in light of the record before the court, would demonstrate his actual innocence. *See Herrera*, 506 U.S. at 417 (describing the threshold for any hypothetical free-standing innocence claim as "extraordinarily high"). As a result, Springer fails to present a cognizable claim for federal habeas review. Thus, the court will deny habeas relief on this claim.

**D.   Claim G**

In Claim G, Springer claims that his sentence for third degree murder is constitutionally invalid. Upon review, the court will deny this claim.

Initially, the court finds that this claim is procedurally defaulted. As discussed above, a claim is procedurally defaulted if the petitioner failed to exhaust his state court remedies and is barred from presenting his claim to the state courts due to an independent and adequate state procedural rule. *Coleman*, 502 U.S. at 732. Springer's instant claim that his sentence is unconstitutional is unexhausted because he never presented it to the state courts, either on direct appeal or collateral attack. However, a new state petition would be deemed time-barred under Pennsylvania law, *see* 42 Pa. Cons. Stat. Ann. § 9545(b), and thus exhaustion is excused but the claim is deemed procedurally defaulted. In order to have the court consider the merits of his claim, Springer must show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse default. Here, Springer has not presented any evidence of his cause for default, nor has he demonstrated that a failure to review this claim would result in a fundamental miscarriage of justice. Thus, Springer has not overcome the hurdle of procedural default.

To the extent that Springer is setting forth a claim based on the state court's review of the discretionary aspects of his sentence based on a failure to meet the requirements of the Pennsylvania sentencing code, this claim does not assert a claim for relief under 28 U.S.C. § 2254. In this case, the Superior Court did review the discretionary aspects of Springer's sentence upon a grant of PCRA relief, but it did so

in order to determine whether the trial court abused its discretion in sentencing by failing to adhere to Pennsylvania's sentencing code.[7]  In a federal habeas proceeding, a challenge to a state court's discretion at sentencing is not reviewable unless it violates a federal constitutional limitation.  *Chapman v. United States*, 500 U.S. 453, 465 (1991) ("[A] person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause.").  Here, Springer has not alleged that his sentence violates any provision of the federal Constitution. Accordingly, as federal habeas review is limited to considering violations of the federal Constitution or federal law, not state law, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the instant claim will be denied.  *See, e.g.*, *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42-43 (3d Cir. 1984) (denying habeas petitioner's challenge to his state sentence where the claim asserts error of state law and does not implicate the federal constitution).

---

[7]  Under Pennsylvania law, the state appellate court has the discretion to grant an allowance of appeal only where it appears that there is a substantial question that the sentence imposed is not appropriate under the Pennsylvania sentencing code. *See* 42 Pa. Cons. Stat. § 9781(b); Pa. R.A.P. 2119(f).

## E.    Claims H & I

In Claims H and I,[8] Springer claims that his plea of *nolo contendere* was not voluntarily entered.  Upon review, the court finds that Springer is not entitled to relief on this claim.

"Implicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence."  *United States v. Mackins*, 218 F.3d 263, 267 (3d Cir. 2000) (quoting *North Carolina v. Alford*, 400 25, 36 (1970)).[9]

Further, with respect to a defendant's plea of *nolo contendere*, due process guarantees require that a defendant's plea be knowing and voluntary.  *Bousley v. United States*, 523 U.S. 614, 618 (1998); *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 240 (1969).  The plea is knowing and

---

[8]  Springer sets forth his eighth claim as follows: "Petitioner's conviction was obtained by a plea of *nolo contendere* that was involuntarily, and unintelligently entered; Petitioner did not fully understand the consequences of entering the plea, nor charges against him."  (Doc. 1 at 6.)  His ninth claim is set forth as follows: "Petitioner's conviction was obtained by an unlawfully induced plea of *nolo contendere*."  (*Id.* at 6-7.)  As these claims are substantially similar, the court will address them together.  Furthermore, Respondents concede that these claims are exhausted, thus the court will address them on the merits.

[9]  Under Pennsylvania law, "[a]lthough the effect of a plea of *nolo contendere* is equivalent to a plea of guilty, the import of the plea is not the same.  In pleading *nolo contendere*; the defendant does not admit his guilt, but merely consents to being punished as if he were guilty."  *United States v. Poellnitz*, 372 F.3d 562, 568 (3d Cir. 2004) (citing *Commonwealth v. Gunter*, 771 A.2d 767, 773 (Pa. 2001) (Cappy, J., concurring)).

voluntary where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Brady*, 397 U.S. at 756. A defendant has the burden of establishing by a preponderance of the evidence that a plea was neither knowing nor voluntary. *United States v. Duarte*, 166 F. App'x 630, 632 (3d Cir. 2006); *United States v. Stewart*, 977 F.2d 81, 85 (3d Cir. 1992).

In the instant case, in his PCRA appeal Springer claimed that his plea is not valid because prior to pleading he was told, or believed, that the murder charges would be dropped after sentencing. (Doc. 20-10 at 7.) He also claimed that he was told by counsel that he would be receiving a definite ten to twenty year sentence. (*Id*.) As a result, in the instant petition Springer contends that because he was not informed of the consequences of entering the *nolo contendere* plea, his plea was not knowing or voluntary.

In ruling on this issue, the Pennsylvania Superior Court adopted the opinion of the PCRA court, denying PCRA relief. (Doc. 20-9 at 8.) The PCRA court reviewed the record and concluded that there was nothing to suggest that Springer did not knowingly or voluntarily enter a plea of *nolo contendere*. (Doc. 20-10 at 7-8.) Specifically, the PCRA court found:

> All of the evidence before us, including defendant's written and oral *nolo contendere* plea colloquies, indicates otherwise. The plea

agreement indicates that there was supposed to be no recommended sentence, and both the oral and written colloquies indicate that defendant was fully versed on all the implications and aspects of his plea of no contest. . . . [D]efendant obviously understood the very serious potential sentencing implications of his plea. That plea was, without question, knowingly, intelligently and voluntarily entered.

(*Id*.) Based on the above, the Pennsylvania Superior Court concluded that the PCRA court discussed and properly disposed of this claim, and denied relief. (Doc. 20-9 at 8.)

After reviewing the record, the court cannot find that the Superior Court's decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. *See Matteo*, 171 F.3d at 891. The law relied upon by the PCRA court, and adopted by the Superior Court, in reaching its holding was in accordance with Supreme Court precedent. There is nothing to suggest that this law was applied unreasonably, or that the decision was based on an unreasonable determination of the facts. Accordingly, habeas relief on this ground will be denied.

## IV.    Conclusion

Based on the foregoing determination that Springer's claims are either procedurally defaulted or without merit, the court will deny the petition for writ of habeas corpus. (Doc. 1.)

The court must now determine whether a certificate of appealability should issue. A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires that the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the court denies a certificate of appealability because jurists of reason would not find it debatable that dismissal of the petition because Springer's claims are either procedurally defaulted or without merit is correct.

An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: September 8, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JERRY A. SPRINGER,**              :
                                    :
      **Petitioner**              :    **CIVIL NO. 1:CV-07-2126**
                                    :
  **v.**                         :    **(Judge Rambo)**
                                    :
**MAJOR KERESTES,** *et al.*,        :
                                    :
      **Respondents**            :

## O R D E R

**AND NOW**, this 8th day of September, 2009, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

3) There is no basis for the issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c).

                                    s/Sylvia H. Rambo
                                     SYLVIA H. RAMBO
                                     United States District Judge